# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
12/14/2020 7:12 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
Mark H Hutchings, Esq.
Nevada Bar No. 12783
Stacy Norris, Esq.
Nevada Bar No. 15445
**HUTCHINGS LAW GROUP, LLC**
552 E. Charleston Blvd.
Las Vegas, Nevada 89104
Telephone: (702) 660-7700
Facsimile: (702) 552-5202
MHutchings@HutchingsLawGroup.com
Stacy@HutchingsLawGroup.com

*Attorneys for Plaintiff Mint Locker, LLC*

RECEIVED
DEC 18 2020
DIVISION OF INSURANCE
STATE OF NEVADA

CASE NO: A-20-826379-C
Department 28

# EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| MINT LOCKER, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD, a Connecticut business entity; DOES 1-10, business entities, forms unknown; DOES 11-20, individuals; and DOES 21-30, inclusive,<br><br>Defendants. | Case No.<br><br>Dept. No.<br><br>**Plaintiff's Complaint for:**<br><br>1. **Breach of Contract;**<br>2. **Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing;**<br>3. **Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing; and**<br>4. **Unfair Claims Handling (NRS 686A and NAC 686A)** |

Plaintiff MINT LOCKER, LLC ("Plaintiff") files the following Complaint against SENTINEL INSURANCE COMPANY, LTD. Plaintiff is informed, believes, and alleges, as follows:

## I.   INTRODUCTION

1. Plaintiff files this action to recover damages and remedies afforded by law pursuant to the common law of the State of Nevada, NRS 686A, and NAC 686A as a result of Defendant's unlawful, tortious, bad faith conduct toward Plaintiff.

2. Plaintiff brings this action against Defendant for common law and statutory damages, punitive damages, interest, attorneys' fees and costs, and other appropriate relief for Defendant's unlawful conduct.

## II. PARTIES, JURISDICTION, AND VENUE

3. At all times relevant hereto, Plaintiff Mint Locker, LLC was and is a limited liability corporation headquartered in Las Vegas, Nevada, licensed to do business in the State of Nevada, and doing business within the County of Clark, State of Nevada.

4. At all times relevant hereto, Defendant, Sentinel Insurance Company, Ltd. was a property and casualty insurer, domiciled at One Hartford Plaza, Hartford, Ct. 6155, organized under the laws of the State of Connecticut, licensed to do business in the State of Nevada, NAIC ID 11000, and was and is doing business in the State of Nevada, including in the County of Clark. Defendant Sentinel Insurance Company, Ltd. is under the common control or is otherwise owned by The Hartford Financial Services Group, Inc., and was doing business under that tradename at all relevant times as set forth in this Complaint. Sentinel Insurance Company, Ltd. shall therefore hereinafter be referred to as "The Hartford."

5. At all times herein mentioned, DOES 1 through 30 were headquartered or residing in the State of Nevada and licensed to do business or actually doing business therein, including the County of Clark.

6. The true names and/or capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 30, inclusive, are unknown to Plaintiff at this time, who therefore sues said defendants by such fictitious names. Each of the defendants designated herein by fictitious name is in some manner responsible for the events and happenings herein referred to, and caused damages proximately and foreseeably to plaintiff as hereinafter alleged. Plaintiff asks leave of the Court to amend this Complaint when the true names and capacities of said defendants have been ascertained.

7. Whenever it is alleged in this Complaint that a party did any act or thing, it is meant that such party's officers, agents, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of such party or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of such party's officers, agents, servants, employees, or representatives. Specifically, parties are liable for the actions of their officers, agents, servants, employees, and representatives.

///

8. Each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants as each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said acts, making each of the Defendants an agent of the other and making each of the Defendants jointly responsible and liable for the acts and omissions of each other as alleged herein.

9. Venue is proper in the Eighth Judicial District Court of Clark County, Nevada, Regional Justice Center, as this Court has personal jurisdiction over Defendants pursuant to NRS 14.065 and Article 6, Section 6 of the Nevada Constitution; and Plaintiff is therefore entitled to designate the place of trial.

### III. FACTUAL ALLEGATIONS

#### A. Background

10. Plaintiff is a dry-cleaning business, with a location at 5661 W. Sahara Ave, Las Vegas, NV 89147. The west Sahara location is the primary production facility for Mint Locker.

11. Plaintiff purchased Business Insurance Coverage through The Hartford, policy number 53 SBA RB6972, effective from January 9, 2019 through January 9, 2020 for coverage of the west Sahara location.

12. Plaintiff's business insurance policy on the 5661 W. Sahara location provided, in event of loss, for $261,300 in Business Personal Property Replacement Cost, 12 Months Actual Loss Sustained for Business Income and Extra Expense Coverage, and 30 Consecutive Days of Extended Business Income.

13. Section (A)(5)(o)(3) of the Special Property Coverage Form attached to the policy states that Mint Locker was covered for "loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage." And, under the Spectrum Policy Declarations attachment to the policy, the Business Income and Extra Expense Coverage is for 12 months actual loss sustained, with extended business income coverage of an additional 30 consecutive days.

14. Section 5(p)(1) of the Special Property Coverage Form attached to the policy provided Extra Expense coverage during the period of restoration that would not have been incurred had the Incident not occurred. Section 5(p)(3) of the Special Property Coverage Form defined "Extra Expense" as

1. "expense incurred [to] avoid or minimize the suspension of business and to continue 'operations'. . . [.]" Section 5p specifically included, and did not exclude, additional labor expenses incurred as a result of the Incident.

15. Plaintiff's policy provided a 'Limit of Insurance' of $2,000,000 for Business Liability and Medical Expenses, with a retroactive date of January 9, 2015; and contained a single event limit in case of destruction of property by fire in the amount of $1,000,000.

16. On March 13, 2019, the west Sahara location sustained fire damage and related water damage (the "Incident"). Most of Plaintiff's production and electronic equipment was destroyed, as well as much of its inventory, for which it was required to compensate its customers.

17. Plaintiff's ability to produce its product was almost completely disabled as a result of the fire.

18. The Plaintiff's average total monthly expense to run its operation at the time of the fire ranged between approximately $70,000 and $80,000 per month.

19. Between March 13, 2019, and July 1, 2019, monthly operating expenses rose on average between 39% and 81% per month to compensate for one-time expenses, additional labor, loan interest, payments to third-parties to process orders, and other costs.

20. Between March 13, 2019, and July 1, 2019, Mint Locker's monthly revenues significantly dropped as compared with historical averages, by 21% in March, by 13% in April, by 33% in May, and by 41% in June.

21. At the time of the Incident, Plaintiff's policy through The Hartford was current.

22. The Policy was paid in full and in effect at the time of the Incident.

23. Plaintiff timely reported the Incident to Defendant and was issued a claim number of CP0018251235.

24. On or around April 10, 2019, Plaintiff submitted a Partial Proof of Loss and Request for Payment to The Hartford, c/o Russell Fiori, requesting $100,000 as partial payment for the losses under Plaintiff's policy, and providing documentation for a portion of Plaintiff's suffered losses. The documents provided included an inventory of the losses at the location; an electronics inventory; and invoices for plumbing and extra expenses the company had to pay to other cleaners to fill its Orders. The correspondence made it clear that the fire threatened to cause make Mint Locker unviable as an

1  ongoing business if Mint Locker did not receive at least a partial payment of funds due and owing
2  under the claim.
3  25.   Subsequently, Plaintiff received a check from The Hartford in the amount of $32,025.48.
4  26.   On or around April 17, 2019, Defendant The Hartford Large Loss Organization issued a check
5  to Plaintiff in the amount of $50,000, for Claim Number Y2HF 06894. The check states the nature of
6  payment is "Coverage – Business Personal Property" and payment reason is "Damages (CL/FD)."
7  27.   On April 26, 2019, the Hartford sent Plaintiff a letter stating that it could not accept proof of
8  loss because there were items it was in the process of addressing with Nationwide, despite the fact that
9  were a number of items clearly covered by the policy and not subject to dispute with Nationwide.
10 28.   On May 1, 2019, The Hartford sent Mint Locker a letter stating that as of that date, The Hartford
11 had paid Mint Locker payments that totaled $82,025.48.
12 29.   On or around May 9, 2019, Defendant The Hartford Large Loss Organization issued two claim
13 payments in the form of a check to Plaintiff in the amount of $60,000, and a check to Plaintiff in the
14 amount of $30,000, for Claim Number Y2HF 06894. These checks state the nature of payment is
15 "Coverage – Business Personal Property" and payment reason is "Damages (CL/FD)."
16 30.   In June of 2019, the Hartford delivered Plaintiff a check for Business Personal Property
17 Replacement Cost.
18 31.   During this time period, Mint Locker incurred significant extra expenses, primarily in paying
19 third-party cleaners to clean its client's clothing. From March through July of 2019, Mint Locker, from
20 one third-party dry cleaner alone, incurred additional expenses in the amount of $102,065.14.  There
21 were at least two other cleaners Mint Locker had to rely on during this time period to fill its orders.
22 32.   During this time period Mint Locker incurred significant extra expenses for payroll because of
23 the added challenge of filling client orders without a production facility. Average weekly payroll costs
24 between the date of the incident and the end of July, 2019 increased between 41% and 105%, depending
25 on the volume of the cleaning that needed to be processed. The total amount of additional payroll
26 incurred by Mint Locker between the date of the incident and August 28, 2019 was $134,197.75.
27 / / /
28 / / /

33. Mint Locker was forced to take a number of high-interest hard money loans to stay open after the incident due to the increased pressure caused by The Hartford's failure to timely pay the extra expenses and the busines interruption loss once those losses because reasonably clear.

34. The loss in revenues, the contraction of the business operations, the loss of clients, the extra expenses, the threat of shut-down, the need to take high-interest hard-money loans, all of this was exacerbated and made worse by The Hartford's refusal to tender sufficient funds to keep Mint Locker Operational, by The Hartford's delay in processing the claim, by The Hartford's delay in getting repairs done at the west Sahara facility, and by The Hartford's ultimate refusal to pay the total sum due and owing under the claim.

35. On or around August 28, 2019, Defendant The Hartford submitted correspondence to Plaintiff's counsel stating that payment on the file had been considered in the following amounts: $261,300.00 for Business Personal Property; $60,748.33 in Business Income w/ Stretch; and $167,025.48 in Extra Expense, for a total of $489,073.81.

36. Near the end of September or the beginning of October of 2019, Mint Locker was able to get replacement equipment and move back into its primary production facility on west Sahara to begin processing orders once again.

37. On November 6, 2019, Plaintiff sent correspondence to Defendants requesting additional payment in the amount of $204,113.61. The request was based on Plaintiff's documented unpaid extra expenses that totaled $23,002.98, and extra payroll incurred in an amount that totaled $134,197.28, and additional business interruption loss in the amount of $46,913.35.

38. On November 12, 2019, The Hartford sent Plaintiff correspondence that rejected the request for payment and sought additional documents to confirm proof of payment to Mint Locker employees for payroll.

39. On November 19, 2019, Plaintiff sent The Hartford copies of all bank and payroll records showing payment of payroll expenses for which Mint Locker was requesting reimbursement.

///

///

///

40. On December 4, 2019, The Hartford sent Plaintiff a letter that stated payment on the file had been considered in the following amounts: $261,300.00 for Business Personal Property; $60,748.33 in Business Income w/ Stretch; and $167,025.48 in Extra Expense, for a total of $489,073.81, and that the information submitted on November 19, 2019 was being considered.

41. On January 6, 2020, The Hartford sent Mint Locker correspondence stating that no further funds were due and owing to Mint Locker under the policy.

42. On January 30, 2020, Plaintiff sent a letter to the Hartford again requesting payment of $204,113.61 and notifying The Hartford that as of early November, 2019, it was reasonably clear these were sums that were due and owing, that The Hartford was in breach of contract, that The Hartford was in violation of the provisions set forth within NRS 686A.310, that The Hartford was engaged in a breach of the duty of good faith and fair dealing.

43. On February 3, 2020, The Hartford sent Mint Locker a letter stating that Mint Locker's claim for additional payment was not supported, but that it agreed to make additional payment of the business income loss in the amount of $70,733.52. Plaintiff, under financial duress, had to submit a notarized proof of loss form to receive that money.

44. Mint Locker incurred extra expense, and business interruption loss because of the fire that extended through March 13, 2020. Its business was devastated by the fire and had not fully recovered as of that date.

45. To date, unpaid extra expenses that totaled $23,002.98, and extra payroll incurred in an amount that totaled $134,197.28, have not been paid to Plaintiff, nor has the significantly diminished value of the business been compensated for, which occurred as the result of The Hartford's putting its interests before the interests of its insured when handling the claim.

///
///
///
///
///
///

7
**PLAINTIFF'S COMPLAINT**

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

46. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above as though fully set forth herein.

47. At the time of the Incident, Plaintiff and Defendant were parties to a valid and binding insurance contract, as set forth more fully above.

48. Plaintiff fully and faithfully performed its obligations under the terms of the insurance contract by paying all premiums, timely reporting the loss described herein, and fully cooperating in the claims process, among other things.

49. Defendant breached the terms of the insurance contract, or otherwise performed unfaithfully under the terms of the contract when, *inter alia*, Defendant failed to perform according to the terms of the contract, and failed to provide coverage and/or tender payment for the reported loss, as set forth more fully above.

50. As a direct and proximate result of Defendants' breach of contract, Plaintiff is entitled to contract damages in an amount to be established according to proof at trial.

### SECOND CAUSE OF ACTION

### CONTRACTUAL BREACH OF THE IMPLIED COVENANT OF

### GOOD FAITH AND FAIR DEALING

51. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 50 above as though fully set forth herein.

52. At the time of the Incident, Plaintiff and Defendants were parties to a valid and binding insurance contract, as set forth more fully above.

53. Plaintiff fully and faithfully performed its obligations under the terms of the insurance contract by paying all premiums, timely reporting the loss described herein, and fully cooperating in the claims process, among other things.

54. There was, implied in this business insurance contract, a duty of good faith and fair dealing that Defendant owed to Plaintiff. This included a duty to address Plaintiff's claim relating to the Incident

with reasonable and customary promptness, to make clear what losses were covered, to tender payment for all covered losses within a reasonable and customary time-period, and to make a good faith effort to comply with the other terms of the insurance contract and its intended purpose.

55. To the extent that Defendant performed under the insurance contract, Defendant breached its duty of good faith and fair dealing, as set forth more fully above, by so performing in a manner that was unfaithful thereto.

56. Plaintiff's justified expectations under the insurance contract were denied when Defendant engaged in the course of conduct more fully described elsewhere herein.

57. As a direct and proximate result of Defendant's breach of the duty of good faith and fair dealing, Plaintiff is entitled to damages in an amount to be established according to proof at trial.

## THIRD CAUSE OF ACTION

## TORTIOUS BREACH OF THE IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

58. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 57 above as though fully set forth herein.

59. At the time of the Incident, Plaintiff and Defendant were parties to a valid and binding insurance contract, as set forth more fully above.

60. There was a special element of reliance or fiduciary duty that existed between Plaintiff and Defendant, given the nature of the insurance contract and the insurer/insured relationship, where Defendant was in a superior or entrusted position.

61. Plaintiff fully and faithfully performed its obligations under the terms of the insurance contract by paying all premiums, timely reporting the loss described herein, and fully cooperating in the claims process, among other things.

62. There was, implied in this insurance contract, a duty of good faith and fair dealing that Defendant owed to Plaintiff. This included a duty to address Plaintiff's claim relating to the Incident with reasonable and customary promptness, to make clear what losses were covered, to tender payment for covered losses within a reasonable and customary period, and to make a good faith effort to comply with the other terms of the insurance contract and its intended purpose.

63. Plaintiff's justified expectations under the insurance contract were denied when Defendant engaged in the course of conduct more fully described elsewhere herein.

64. As a direct and proximate result of Defendant's tortious breach of the duty of good faith and fair dealing, Plaintiff is entitled to damages in an amount to be established according to proof at trial.

65. The conduct of Defendant described herein, including Defendant's tortious breach of the duty of good faith and fair dealing, was intentional, malicious, wanton, and oppressive, with a conscious disregard for Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries complained of herein. Such conduct amounts to oppression, fraud, or malice, as described in NRS 42.005(1). Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants, and each of them.

## FOURTH CAUSE OF ACTION
## UNFAIR CLAIMS HANDLING
## NRS 686A; NAC 686A

66. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as though fully set forth herein.

67. Defendant has engaged in unfair claims handling in relation to Plaintiff, including by:

   a. Misrepresenting to Plaintiff pertinent facts or insurance policy provisions relating to any coverage at issue;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   c. Failing to effectual; prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonable clear;

   d. Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

   e. Delaying the investigation or payment of claims by requiring Plaintiff to submit a preliminary claim report, and then requiring the subsequent submission of formal proof

of loss forms, both of which submissions contain substantially the same information;

f.  Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the insurance policy coverage;

g.  Failing to promptly, fairly, and equitably settle a claim in which Defendants' liability has become reasonably clear; and

h.  Failing to make payment for the portion or portions of a claim not in dispute where such payment can be made without prejudice to any interested party.

68. The Factual Allegations section of this Complaint gives a basis for Plaintiff's claim that Defendant violated these statutory requirements.

69. Defendant had an actual or implied awareness of the absence of a reasonable basis for denying or failing to remit payment for benefits to Plaintiff that were due under the Policy. This is reflected in the communications between the parties, and Plaintiff anticipates that discovery will reveal further evidence of either actual or implied awareness of a violation.

70. Plaintiff suffered damage in excess of $15,000 as a result of Defendant's conduct.

71. The conduct of Defendant described herein, including Defendant's unfair claims handling in violation of NRS 686A, was intentional, malicious, wanton, and oppressive, with a conscious disregard for Plaintiff's rights and with the intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries complained of herein. Such conduct amounts to oppression, fraud, or malice, as described in NRS 42.005(1). Plaintiff is therefore entitled to an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendant, and each of them.

72. As a direct and proximate result of Defendant's unfair claims handling, Plaintiff has incurred attorneys' fees and costs which it is entitled to recover.

///
///
///
///
///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1. For an award of all actual, consequential, and incidental damages suffered by Plaintiff as a result of Defendant's conduct complained of herein, in excess of $15,000, in an amount to be established according to proof at trial;

2. For an award of punitive damages against Defendant pursuant to NRS 42.005, or otherwise;

3. For an award of Plaintiff's attorneys' fees and costs pursuant to any applicable statutory or contractual basis;

4. For an award of pre and post-judgment interest pursuant to NRS 17.130(2), NAC 686A.675(1), and any other applicable statutory or contractual basis; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 14, 2020       HUTCHINGS LAW GROUP, LLC

*/s/ Mark H. Hutchings*
By:_____
Mark H. Hutchings, Esq.
Stacy Norris, Esq.
552 E. Charleston Blvd.
Las Vegas, NV 89104
Telephone: (702) 660-7700
*Attorneys for Plaintiff Mint Locker, LLC*